UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br>　　　　　Plaintiff,<br>vs.<br>DENNIS R. BOLZE and<br>CENTURION ASSET MANAGEMENT, INC.,<br>　　　　　Defendants,<br>and<br>ADVANCED TRADING SERVICES, INC.,<br>　　　　　Relief Defendant. | No:　3:09-CV-88<br>　　　(VARLAN/SHIRLEY) |

### ORDER OF PRELIMINARY INJUNCTION AND OTHER ANCILLARY RELIEF AGAINST CENTURION ASSET MANAGEMENT, INC., AND ADVANCED TRADING SERVICES, INC.

　　This matter comes before this Court on the Motion for Preliminary Injunction [Doc. 6] filed by Plaintiff Commodity Futures Trading Commission ("CFTC"). As of March 31, 2009, service has been properly effected upon Defendant Centurion Asset Management, Inc. ("CAM") and Relief Defendant Advanced Trading Services, Inc. ("ATS" or "Relief Defendant"), pursuant to Fed. R. Civ. P. 4(e)(2), by delivering a copy of the summons and complaint to Nevada Corporate Headquarters Inc., the registered service agent for CAM and ATS. However, Defendant Dennis R. Bolze ("Bolze") has not yet been served with Plaintiff's Complaint or Motions for Statutory Restraining Order and Preliminary Injunction as he has been in the custody of the U.S. Marshal's Service since his March 12, 2009, arrest in Pennsylvania on a criminal

matter and subsequent transportation to Tennessee.[1]  Accordingly, this Injunction is issued in regard to Defendant CAM and Relief Defendant ATS.

Plaintiff CFTC filed a Complaint on March 3, 2009, against Defendant Bolze, Defendant CAM (collectively "Defendants") and Relief Defendant ATS, seeking injunctive and other equitable relief for violations of the Commodity Exchange Act ("the Act"), as amended, 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1, *et seq.* (2008).  On March 4, 2009, the Court entered an *Ex Parte* Statutory Restraining Order against the Defendants [Doc. 17] and set this matter for hearing on the Motion for Preliminary Injunction.  The hearing was held on March 31, 2009.  [*See* Doc. 26.]

This Court having considered the evidence presented in a hearing on CFTC's Motion as well as the pleadings, memoranda, declarations and other exhibits filed and made in support of the CFTC's Motion finds:

**THE COURT FINDS THAT**:

1. This Court has jurisdiction over the subject matter of this action and Defendant CAM and Relief Defendant ATS pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2006), which authorizes the CFTC to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

---

[1] On March 30, 2009, Defendant Bolze made an initial appearance in a criminal matter in the Eastern District of Tennessee, docketed as Case Number 3:09-mj-2017 as of the preliminary injunction hearing date.

2. Venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1(e) (2006), in that the Defendants transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District.

3. The pending bankruptcy matters do not affect the Commission's ability to file an action for injunctive relief seeking to enjoin the Defendants' fraud. Such regulatory actions fall under an exception to the bankruptcy stay provisions. *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988) ("In particular, §§ 362(b)(4) and 362(b)(5) of the automatic stay except both 'the commencement or continuation of an action or proceeding' and 'the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory powers' from the automatic stay.")

4. There is good cause to believe that CAM has engaged in and is likely to engage in acts and practices that violate Sections 4b(a)(2) and 4o(1) of the Commodity Exchange Act, 7 U.S.C. §§ 6b(a)(2), and 6o(1) (2006), and Section 4b(a)(1) of the Act as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act ("CRA")), § 13102, 122 Stat. 1651 (effective June 18, 2008), to be codified at 7 U.S.C. § 6b(a)(1). Further CAM has engaged, in engaging, or is about to engage in acts or practices that violate the registration provision of Section 4m(1) of the Act, 7 U.S.C. §6m(1) (2006). Furthermore, there is a reasonable likelihood that the CFTC will prevail on the merits of this action.

5. Defendants have made material misrepresentations and failed to disclose material facts to prospective pool participants regarding their misappropriation of participant funds for their personal use and benefit, the profitability of CAM, the performance of the participants'

investments in CAM, the identity of the President of CAM as represented on an Investor Agreement (the "Agreement"), and Bolze's prior criminal conviction. In addition, the Defendants distributed fictitious account statements to pool participants that, among other things, misstated account balances.

6. The Commission has also shown by a preponderance of evidence that CAM has placed pool participants' assets in jeopardy.

7. CAM violated Section 4m(1) of the Act in that it acted as a commodity pool operator by soliciting and accepting funds from pool participants, using instrumentalities of interstate commerce, including the U.S. mail and interstate bank wire transfers for the purpose of creating a pool of funds to trade commodity futures but did not register as one.

8. Relief Defendant ATS received some of the funds that CAM and CAM's employees solicited and collected through its fraudulent activities. Thus, ATS should be ordered to disgorge these ill-gotten funds.

9. On January 9, 2009, an involuntary bankruptcy petition was filed against Dennis Bolze in the United States Bankruptcy Court for the Eastern District of Tennessee (*In re Dennis Bolze*, 3:09-bk-30075). G. Wayne Walls is the duly appointed and acting Chapter 7 Trustee ("Trustee"). On March 26, the Trustee filed an Adversary Complaint for Substantive Consolidation of Non-Debtor Entities in the bankruptcy case against Defendant CAM and Relief Defendant ATS (Adv. No.09ap03035).

10. There is good cause for granting a preliminary injunction to protect the status quo, protect public customers from further loss and damage and enable the CFTC to fulfill its statutory duties.

# DEFINITIONS

**FOR THE PURPOSES OF THIS ORDER, THE FOLLOWING DEFINITIONS APPLY:**

11. "Assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables, lines of credit, contracts, insurance policies, and all cash, wherever located.

12. The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, but is not limited to, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

## Statutory and Regulatory Background

13. A commodity pool is defined in Regulation 4.10(d)(1), 17 C.F.R. §4.10(d)(1), as any investment trust, syndicate or similar form of enterprise engaged in the business of investing pooled funds in trading commodity futures and/or commodity options.

14. A commodity pool operator ("CPO") is defined in §1a(5) of the Act, 7 U.S.C. §1(a)(5), as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.

15. A participant is defined in Regulation 4.10(c), 17 C.F.R. §4.10(c), as any person who has any direct financial interest in a commodity pool.

16. The general anti-fraud provisions of the Act, §§4b(a)(1)(A)-(C), 7 U.S.C. §§ 4b(a)(1)(A)-(C), for conduct occurring on or after June 18, 2008; and 4b(a)(2)(i)-(iii), 7 U.S.C. §§6b(a)(2)(i)-(iii), for conduct occurring before June 18, 2008, make it unlawful for any person to engage in fraudulent or deceptive conduct, including the issuance of false reports or statements, in connection with futures transactions.

17. Section 4*o*(1) of the Act, 7 U.S.C. §6*o*(1), makes it unlawful for any CPO to either directly or indirectly employ any device or scheme to defraud commodity pool.

18. Section 2(a)(1)(B) of the Act, 7 U.S.C. §2(a)(1)(B), establishes a principal's liability for the acts of a principal's agent that occur within the scope of the agent's relationship with its principal.

19. Section 4m(1) of the Act provides that it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with its CPO business.

**Parties**

**A.   Plaintiff**

20. The **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with administering and enforcing the Commodity Exchange Act and Regulations. The Commission is authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, to bring a civil action to enjoin any act or practice constituting a violation of the Act, to enforce compliance with the Act, and to seek civil penalties.

B. **Defendants**

21.     **Dennis R. Bolze** is 60 years old and his last known address is 918 Campbell Lead Rd., Gatlinburg, TN 37738. He has never been registered in any capacity with the CFTC.

22.     **Centurion Asset Management, Inc.** is located at 101 Convention Drive, Suite 701, Las Vegas, Nevada 89109. CAM was incorporated in Nevada on February 13, 2003. CAM has never been registered in any capacity with the CFTC.

C. **Relief Defendant**

23.     **Advanced Trading Services, Inc.** is located at 101 Convention Drive, Suite 701, Las Vegas, Nevada 89109. ATS was incorporated in Nevada on November 1, 2001 and was placed in default by Nevada on December 1, 2008. ATS has never been registered in any capacity with the CFTC.

D. **The Fraudulent Scheme**

The verified facts and sworn testimony regarding the Statutory and Regulatory Background show that:

**CAM's Incorporation and Solicitation of Pool Participants.**

24.     From the time CAM began operating ATS (the "commodity pool"), CAM employees, representatives, agents (hereinafter "employees" or "representatives"), and others, convinced at least 100 pool participants to entrust approximately $20 million to CAM and its employees to be pooled with the funds of others and used to trade commodity futures contracts. Specifically, approximately 40-45 or 40% of the investors reside in the United States and approximately 60-65 or 60% reside outside the United States.

25.     After prospective pool participants expressed an interest in investing in the pool, CAM's employees sent them an Investor's Agreement ("Agreement") that set forth the terms of

the investment. The Agreement allowed the pool participants to withdraw all or part of their investment with CAM at any time without restriction and provided that CAM should be provided ten days from the date it receives notice to deliver the participant's investment.

26. Cam's employees instructed pool participants to send their funds for investment in CAM to a Bank of America account, in the name of CAM, and to mail their completed account application to CAM in Las Vegas, Nevada.

**Fraudulent Misrepresentations and Omissions to Pool Participants.**

27. During the relevant period, CAM representatives made oral misrepresentations and failed to disclose material facts to prospective pool participants regarding the profitability of CAM. Specifically, they represented to prospective pool participants that the pool was generating an annual profit of approximately 15 to 20 per cent.

28. CAM failed to tell prospective pool participants that in 2001, Bolze, one of its employees, pleaded guilty in the Sevier County, Tennessee, Criminal Court to four counts of failure to file sales tax returns and failure to pay sales tax and was sentenced to six years in prison for those offenses. The Court, however, suspended the agents' prison sentence and ordered him to be placed on supervised probation and fined $1,000 plus court costs

29. CAM's representatives also misrepresented that a private attorney, Michael L. Potter ("Potter") was the president of CAM, when he was not. The Agreement that Defendants entered into with pool participants identified Potter as the President of CAM and the officer executing the Agreement on behalf of CAM. In fact, Potter was only a temporary nominee whose name was submitted as CAM's president solely for purposes of incorporating CAM with the Nevada Secretary of State's office. Potter's name was to be removed from incorporation documents within 30 days, after CAM submitted its permanent officers and directors to the

Nevada Secretary of State. Potter never authorized CAM to use his name in connection with any contracts executed by CAM or the conducting of any business by CAM.

**Issuance of False Records/Statements to Pool Participants.**

30. During the relevant period, a CAM employee directed an individual who provided website services to set up a website for Defendants, entitled www.thecampartnership.com. After the website was set up, CAM provided individual pool participants with passwords that enabled them to access their respective "pool accounts" and determine the value of their "account balances" via the website. Through this website, CAM caused false statements to be issued to pool participants. Specifically, a CAM employee provided the website operator with information that falsely depicted the account balances of the individual pool participants. The account statements received by pool participants typically showed that the pool earned an annual profit of approximately 15 to 18 per cent. In fact, the futures trading accounts owned or controlled by CAM sustained net losses exceeding $800,000 in the years between 2002 and 2008.

31. CAM also provided some pool participants with annual "invoices" representing the balances in their respective accounts and the management fees paid to CAM. These invoices were either mailed to pool participants or electronically transmitted to them and falsely depicted the individual pool participants' account balances.

32. CAM distributed fictitious account statements to participants. At least one commodity pool participant received an account statement from CAM that purported to be a July 1, 2008 daily account statement for a commodity account that ATS maintained at a futures commission merchant ("FCM"). In fact, this account statement was fictitious because while ATS maintained a commodity account at that FCM, the FCM never issued a July 1, 2008 daily account statement for ATS's account and the account balances were false

9

**The Pool's Actual Commodity Trading Performance.**

33. Despite CAM's representations to pool participants that it was pooling their funds to trade commodities on their behalf, CAM's representative opened at least two commodity trading accounts at a registered FCM in the name of ATS and represented to the FCM that the monies in the trading accounts were ATS's own funds and that the monies did not represent the investment of any other individuals or companies. The two trading accounts were funded with pool participants' funds.

34. CAM employees opened ATS's first account at the FCM on March 4, 2002. That account was active from march 2002 through December 2008 and never carried an account balance in excess of $250,000. The account typically traded Standard and Poor's ("S&P") 500 index futures contracts, NASDAQ 100, and Russell 200 stock index futures contracts. Over the life of the account, the account incurred cumulative losses of $794,889. More specifically, the account realized trading losses of: $47,338 in 2002; $118,318 in 2003; $128,373 in 2004; $127,105 in 2005; $24,182 in 2006; $324,138 in 2007; and $25,434 in 2008). CAM's representative withdrew all but approximately $500 from the account in November 2008.

35. ATS's second commodity trading account at the FCM was opened in September 2003. That account was active from September 2003 through June 2008. Over the life of the account, the account incurred cumulative trading losses of $27,728. In particular, the account realized trading losses of: $3,595 in 2003; $8,197 in 2004; $15,786 in 2005; and $150 in 2008. The account did no futures trading in 2006 and 2007 and currently carries a negligible balance. Thus, ATS accounts have lost money every year and sustained trading cumulative trading losses in excess of $800,000 since 2002.

**Misappropriation of Pool Participant Funds.**

36. CAM's representatives solicited and received approximately $20 million in pool participant interests and reported profits to participants, but the ATS trading accounts lost money and never carried an account balance in excess of $250,000. CAM has misappropriated participant funds for its own use and benefit and operated the commodity pool in a manner akin to a Ponzi scheme, using newly received participant funds to pay profits and withdrawals to participants.

**CAM's Inability to Repay Pool Participants.**

37. Since approximately November 2008, pool participants have tried to contact CAM in order to withdraw funds from their accounts. A CAM representative initially told pool participants that withdrawals could not be made since the pools' funds were invested in Treasury securities that had not matured. Subsequently the pool participants were told that they could not withdraw their funds because the pools' funds were invested in Barrier Notes that had not matured. In fact, their funds had not been invested in Barrier Notes.

## ORDER OF PRELIMINARY INJUNCTION

**IT IS THEREFORE ORDERED THAT**:

38. CAM and its officers, agents, servants, employees, nominees, or attorneys are restrained, enjoined and prohibited, until further order of this Court, from directly or indirectly:

> A. Cheating or defrauding or attempting to cheat or defraud other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person, in violation of Section 4b(a)(2)(i) of the Commodity Exchange Act.
>
> B. Willfully making or causing to be made to other persons any false report or statement thereof, or willfully to enter or cause to be entered for such persons any false record thereof, in or in connection with any order to

make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person, in violation of Section 4b(a)(2)(ii) of the Commodity Exchange Act.

C. Willfully deceiving or attempting to deceive other persons by any means whatsoever in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person, in violation of Section 4b(a)(2)(iii) of the Commodity Exchange Act.

D. Employing any device, scheme, or artifice to defraud any participant or prospective participant, or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or prospective participant, by use of the mails or any means or instrumentality of interstate commerce, in violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1)

E. Operating as a CPO engaged in the business of soliciting, accepting, or receiving from others, funds, securities, or property, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market without being registered with the Commission as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

39. CAM and all of its officers, agents, servants, employees, nominees, or attorneys are further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly:

A. Engaging in, controlling or directing the trading for any commodity futures or options accounts for or on behalf of any other person or entity, whether by power of attorney or otherwise;

B. Entering into any commodity futures or options transactions for its own account, for any accounts in which it has a direct or indirect interest and/or having any commodity futures or options traded on its behalf; and

C. Soliciting any new or existing pool participants or accepting any new deposits of funds from any new or existing pool participants.

## ASSET FREEZE

40. CAM and ATS and all of their officers, agents, servants, employees, nominees, or attorneys are further restrained, enjoined and prohibited, until further order of this Court from directly or indirectly:

   A. Dissipating, withdrawing, transferring, removing, concealing or disposing of cash, cashiers checks, funds, assets or other property of, or within the custody, control, or possession of CAM and Relief Defendant, including, but not limited to, all funds, personal property, money or securities held in safes, safety deposit boxes and all funds on deposit in any financial institution, bank or savings and loan account, including funds or property of customers, wherever located, whether held in the name of CAM, Relief Defendant or otherwise, and the assets affected by this paragraph shall include both existing assets and assets acquired after the effective date of this Order. The asset freeze prohibits the dissipation of assets that are in any way related to the fraud;

   B. Destroying, mutilating, concealing, altering or disposing of, in any manner, any of the books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of CAM or ATS, wherever located, including all such records concerning CAM and ATS' business operations, until further order of the Court; and

   C. Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of CAM and ATS, wherever located, including all such records concerning CAM and ATS' business operations.

41. The asset freeze portion of this Order is not directed to and affords no relief against the Trustee appointed in the pending Bankruptcy matter of *In re Dennis Bolze*, (3:09-bk-30075), his agents, representatives or attorneys, to the extent it may reach that bankruptcy estate's assets, and it should be enforced in a manner which is consistent with the orders of the bankruptcy court and all applicable bankruptcy laws.

42. Nothing in this Order of Preliminary Injunction and Other Ancillary Relief is intended to limit or constrain any duly appointed Trustee's fulfillment of his responsibilities and duties as Trustee under the laws of the United States, the Bankruptcy Code and/or the orders of

the United States Bankruptcy Court, including but not limited to those duties related to the maintenance, preservation, marshalling and distribution of any of CAM and/or ATS' assets in accordance with the above authority, including any distribution or liquidation of assets as approved by the Courts or to limit the protections he is afforded under those laws.

43. Notwithstanding the asset freeze provisions of Paragraph A above, and subject to compliance with all applicable bankruptcy laws, the parties may seek modification of the asset freeze order.

**ACCESS TO AND INSPECTION OF BOOKS AND RECORDS**

44. The Trustee or others may have custody and control of previously identified books and records of CAM and/or ATS. The Trustee, Defendant, Relief Defendant, and their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with CAM or ATS who receive actual notice of this Order by personal service or otherwise, including facsimile transmission, shall cooperate fully with the Commission to locate and provide to representatives of the Commission, upon reasonable notice, all books, records and other documents of Defendants wherever such books and records may be situated; and shall not destroy, alter, conceal or dispose of any books, records, documents, correspondence, brochures, manuals, electronically stored data, meta data, tape recordings or other property, wherever stored or located concerning the Defendants and the Relief Defendant; and shall permit representatives of the Commission, upon reasonable notice to make copies of those books and records.

45. Until further order of this Court, CAM and ATS and each firm, corporation, partnership, association or other person or entity with notice which holds or is a depository of CAM or ATS' funds, securities, assets or other property of any kind, are prohibited from directly or indirectly transferring, withdrawing, removing or disposing of any such funds, securities, assets or

other property, wherever situated; provided, however, the provisions of this sentence shall not prohibit any secured creditor who has obtained stay relief in the bankruptcy case of Dennis Bolze from liquidating any collateral that may secure such secured creditor's debt to the extent that the order of the bankruptcy court so permits such disposition.

46. The injunctive provisions of this Order shall be binding on CAM and the ATS, and upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of CAM and ATS and upon any person who receives actual notice of this Order by personal service, facsimile or otherwise insofar as he or she is acting in active concert or participation with CAM and ATS.

## ACCOUNTING

47. CAM and ATS shall prepare, sign and tender to the CFTC within 21 days of this Order, an interim accounting and prepare, sign and file with this Court, within 60 days, a complete and accurate accounting for the period of May 2003, to the date of such accounting, which shall be no earlier than the date of this Order. Such accounting shall include, without limitation, the identification of:

> A. All funds, securities, commodity interests, assets and other property in CAM or ATS' possession, custody or control, currently owned or controlled (legally, equitably or otherwise) directly or indirectly by CAM or ATS, whether individually or jointly, including accounts or assets of the Cam or ATS held by financial institutions located outside the territorial United States;
>
> B. All funds, securities, commodity interests, assets and other property received directly or indirectly by CAM or ATS, whether individually or jointly, describing the source, amount, disposition, and current location of each listed item;
>
> C. All funds, securities, commodity interests, assets and other property transferred or otherwise disposed of directly or indirectly by Cam or ATS, whether individually or jointly, describing the source, amount, disposition, and current location of each listed item, including accounts or assets of

CAM or ATS held by financial institutions located outside the territorial United States and provide the CFTC with access to all records of accounts or assets of Cam or ATS held by financial institutions located outside the territorial United States; and

D. The name and last known address of each bailee, debtor or other person or entity currently holding any funds, securities, commodity interests, assets or other property owned or controlled (legally, equitably or otherwise) by CAM or ATS, either individually or jointly.

## DIRECTIVES TO FINANCIAL INSTITUTIONS

48. It is further ordered, pending further Order of this Court, that any financial or brokerage institution, business entity, or person that holds, controls, or maintains custody of any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of CAM or ATS, or has held, controlled, or maintained custody of any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of CAM or ATS at any time since 2004, shall, to the extent such information is readily ascertainable from such financial institution's records.

A. Provide counsel for the CFTC, within fifteen (15) business days of receiving a copy of this Order, a statement setting forth: (a) the identification number of each and every such account or asset titled in the name, individually or jointly, of CAM and ATS, or owned, controlled, managed, or held by, on behalf of, or for the benefit of the CAM or ATS; (b) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (c) the identification of any safe deposit box that is either titled in the name, individually or jointly, of CAM or ATS or is otherwise subject to access by CAM or ATS; and

B. Upon request by the CFTC, promptly provide the CFTC with copies of all records or other documentation pertaining to such account or asset, including but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instructions or slips, currency transactions reports, 1099 forms, and safe deposit box logs.

49. It is further ordered that copies of this Order may be served by any means, including by way of personal service, Federal Express or other commercial overnight service, email or facsimile or pursuant to Federal Rule of Civil Procedure 4, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of the CAM or ATS, or that may be subject to any provision of this Order. Senior Trial Attorney Jon Kramer or Senior Investigators Michael Tallarico and Mary Elizabeth Spear are hereby specially appointed to serve process, and/or effectuate service of process, including this Order and all other papers in this case.

50. Pursuant to Section 6(c) of the Act, 7 U.S.C. § 13a-1, no bond need be posted by the Plaintiff, CFTC, which is an agency of the United States of America.

51. This Order shall remain in effect until further order of this Court and this Court shall retain jurisdiction over this action to ensure compliance with this Order and for all other purposes related to this action.

**IT IS SO ORDERED** this 1st day of April, 2009.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

17
Case 3:09-cv-00088   Document 27   Filed 04/01/09   Page 17 of 17